UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LEON T. WILLIAMS                                    CIVIL ACTION

VERSUS                                             NO. 11-1404

MICHAEL J. ASTRUE, COMMISSIONER                    SECTION "I" (2)
OF SOCIAL SECURITY ADMINISTRATION


## FINDINGS AND RECOMMENDATION

Plaintiff, Leon T. Williams, proceeding pro se, seeks judicial review pursuant to

Section 405(g) of the Social Security Act (the "Act") of the final decision of the

Commissioner of the Social Security Administration (the "Commissioner"), denying

plaintiff's claim for disability insurance benefits ("DIB") and supplemental security

income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§

405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.      PROCEDURAL HISTORY

Williams filed applications for DIB and SSI on August 5, 2009, alleging disability

since September 1, 2005, due to depression. (Tr. 116-19, 120-22, 160). After his

applications were denied, Williams requested a hearing before an Administrative Law

Judge ("ALJ"), which was held on May 12, 2010. (Tr. 31-65). On July 29, 2010, the

ALJ issued a decision denying plaintiff's applications for benefits. (Tr. 19-27). After

the Appeals Council denied review on May 25, 2011, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-3).

Plaintiff did not file a memorandum of facts and law as ordered by the court. Record Doc. No. 13. After he was ordered to show cause why his case should not be dismissed for failure to prosecute, Record Doc. No. 14, his mother filed a letter with the court on his behalf, Record Doc. No. 15, which satisfied the court's call docket order. Record Doc. No. 16. Although defendant filed his reply memorandum four days late without seeking leave for the late filing, the court has considered the memorandum. Record Doc. No. 17.

## II.  STATEMENT OF ISSUES ON APPEAL

Williams, who is proceeding pro se in this court, does not assign any legal errors. His mother's letter to the court makes only factual assertions that plaintiff has been depressed since his childhood, is often sad, has difficulty being around other people and isolates himself in his room. Plaintiff's mother states that he experienced additional sadness and had more difficulty being around people after the deaths of his sister and brother-in-law and after Hurricane Katrina hit New Orleans on August 29, 2005. Record Doc. No. 15. All of these facts are already noted in the administrative record.

Williams was represented by counsel at the administrative level, who filed a letter brief in support of his appeal to the Appeals Council.  (Tr. 7-13).  In that brief, plaintiff contended that the ALJ made the following errors:

A.      The ALJ erred by finding that Williams is capable of performing other jobs that exist in the national economy, when those jobs exceed the residual functional capacity assessed by the ALJ.

B.      The ALJ erred in assessing plaintiff's credibility.

C.      The ALJ erred by failing to incorporate all of plaintiff's severe limitations in the ALJ's residual functional capacity assessment.

D.      The ALJ erred by failing to incorporate all of plaintiff's severe limitations in the ALJ's hypothetical question to the vocational expert.

(Tr. 6, 11).

Therefore, in this report and recommendation, I address the specifications of legal error that plaintiff made in his brief to the Appeals Council.

III.    <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

The ALJ made the following relevant findings:

1.      Williams has a severe impairment consisting of an affective disorder.

2.      He has the residual functional capacity to perform the full range of sedentary work, except that he is limited to simple, routine and repetitive tasks involving only simple, work-related decisions; with few, if any, workplace changes; and in a work environment free of fast-paced production requirements.

3.      Although plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

4.      Williams is not capable of performing his past relevant work as a plasterer and scaffold builder, which were skilled jobs performed at the heavy exertional level.

5.      Based on his age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Williams is capable of performing, such as a janitor/cleaner at the light, medium or heavy exertional level.

(Tr. 21-26).

IV.    ANALYSIS

A.      Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971);

Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2008). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.    Factual Background

Williams testified that he was 48 years old at the time of the hearing and that he had completed the ninth grade. He said he started working at a young age in the construction business. He stated that he cannot read and can only write a little bit. He testified that he cannot read a newspaper or write a short note with simple sentences, but he can make change at a grocery store. (Tr. 38-39).

Plaintiff testified that he built scaffolds and stocked and loaded trucks and worked as a plasterer. (Tr. 40, 57). He said that he frequently lifted 35 to 40 pounds at a time during his 17 years in the construction business. He stated that he left New Orleans for Hurricane Katrina and that, when he returned after the hurricane, the company for which he worked had shut down. He testified that he has been unable to find work since then.

Williams stated that he suffers from depression, stays to himself in his room, does not answer the phone and does not want to be around anyone. (Tr. 40). He said he has crying spells about two to three times per week. He testified that he has been treated at the Metropolitan Behavioral Center in New Orleans East, where his health care providers mostly ask him how his medication is coming along. He said that the medication does not work. He rated its effectiveness at 4 or 5 on a scale of 1 to 10. He stated that he cannot get rid of his sadness. He testified that he has always been depressed and that it got worse after Hurricane Katrina. (Tr. 41).

Plaintiff said he takes Lexapro,[3] Abilify[4] and another medication for depression, but could not remember the name of the third one. He stated that the only side effect of his medications is that he is sometimes a little shaky, but the shakiness goes away.

Williams testified that he goes to sleep about 10:30 to 11:00 p.m., but wakes up around 1:00 or 2:00 a.m. and cannot go back to sleep. He stated that he does no household chores or yard work, not because he physically cannot, but because he does not want to do anything. He said he can drive, but does not drive much because he has

---

[3]Lexapro (generic name: escitalopram oxalate) is a selective serotonin reuptake inhibitor that is indicated for the acute and maintenance treatment of major depressive disorder in adults. Physicians' Desk Reference 1161 (64th ed. 2010).

[4]Abilify (generic name: aripiprazole) "is an atypical antipsychotic" indicated as an adjunctive therapy, in combination with other antidepressants, for major depressive disorder in adults who did not have an adequate response to antidepressant therapy. Physicians' Desk Reference 740 (66th ed. 2012).

nowhere to go.  (Tr. 42).  He testified that he used to like fishing and shooting pool, but now has no desire to do anything. Plaintiff said he used to walk his dog for a couple of miles, but he gave the dog to his brother because he did not want to do it anymore.  He stated that he no longer takes walks and has no friends.  He testified that when he is under stress or mental pressure he stays in his room.

Plaintiff said that his memory is not good and he quickly forgets things.  He gave an example of having gone fishing with his uncle and getting a ticket from the Fish and Wildlife agency because he did not have a license.  He stated that he obtained a fishing license and knew about the court date, but forgot to go to court, so now he had to pay a fine.  As another example, he testified that he was driving his mother somewhere and he passed up their stop because he forgot where they were going. (Tr. 43-44).

Williams testified that his mother filled out his disability application for him because he cannot read well.  He stated that he provided the answers and his mother wrote them down.  He said he lives with his mother and father.  (Tr. 45).  He testified that he takes care of his mother, who is in a wheelchair, by fixing food for her and bringing food, water and medications to her.  (Tr. 46).  He stated that he takes care of his own personal needs, including preparing meals for himself, such as sandwiches, TV dinners, cold cuts, cereal, light food and fruit.  He testified that he is capable of washing clothes

and dishes and making his bed, but that he has no motivation to do so because of his depression. (Tr. 47).

Plaintiff stated that he used to walk a lot, but does not walk anymore. He said he drives his mother's car to take her or himself to the doctor, but otherwise does not go anywhere. He testified that he goes to his doctor's office once a month, which is located less than a mile from his house, and has no difficulty driving there. (Tr. 48). He stated that he sometimes goes to the grocery store by himself, walks through the store to locate the items he wants to buy and, if he forgets what to buy, calls home to find out what is needed. (Tr. 49-50).

Williams testified that he goes to church every Sunday from 11:30 a.m. to 2:00 p.m. and that the people at his church know not to bother him most of the time. (Tr. 50-51). He stated that he follows spoken instructions better than written ones. He said he misses his sister, who was killed with her husband in the same car accident that injured his mother and his cousin, both of whom are now in wheelchairs. He stated that it is hard because she was his only sister and his life will never be the same. (Tr. 51).

When questioned about an October 2009 medical record, which indicated that he had stopped taking trazodone[5] every night because he was sleeping better, plaintiff said

---

[5]Trazodone hydrochloride is indicated for the treatment of major depressive disorder in adults. Id. at 637.

he no longer sleeps well. He stated that his dosage of trazodone had been increased, so that he now takes two pills instead of one daily. (Tr. 51-52). He testified that he had enjoyed the New Year's holiday with his family because his brother, whom he had not seen in a few years, was in town and because "just being around the family kind of lift[ed] me up at that time." (Tr. 52). He stated that he had slept well for a while, as documented in the medical records in January and February 2010, but that his sleep pattern had changed and he did not know why. (Tr. 52-53).

Williams testified that he had tried to lose weight, which his health care providers had recommended because of his cholesterol. He stated that he has no appetite anyway and that he was trying to stay away from fried foods and to eat mostly salads. He said that he goes to therapy sessions about once a month, which help a little. (Tr. 53-54). He denied that he had ever stopped taking Abilify because of shakiness and said he takes it once a day as prescribed. He said the initial shaking from Abilify had stopped and that he experienced no other side effects from taking it. (Tr. 54-55).

Plaintiff stated that, on a typical day, he mostly stays in a room with his mother. He said she stays up watching TV most of the night, so he gets her up about noon and does whatever she needs him to do for her. He testified that he watches TV most of the day and that he likes to watch sports and Western movies. He said he can usually

understand the story and watch the movies from start to finish.  He stated that, other than going to church, he does not participate in any activities involving people.  (Tr. 55-56).

C.    Vocational Expert Testimony

A vocational expert, Mary Ellen Kelly, testified at the hearing that plaintiff's past relevant work as a plasterer and scaffold builder was skilled work at a heavy exertional level.  (Tr. 58).  The ALJ posed a hypothetical of an individual with plaintiff's age, education and past relevant work who has "no exertional limitations" and who can perform work that is limited to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements; that involves only simple, work-related decisions with few, if any, workplace changes; and that requires only occasional interaction with the public.  Kelly testified that such a person could not perform either of plaintiff's past relevant jobs.  (Tr. 58).  She testified that the hypothetical person could perform the job of janitor/cleaner at the light, medium and heavy levels, all of which exist in significant numbers in Louisiana and the nation.  She stated that there were no transferable skills from plaintiff's past relevant work because those skills were specific to those jobs.

Kelly initially stated that the same hypothetical person could perform jobs in the food preparation category.  (Tr. 59).  However, upon further questioning by the ALJ regarding specific jobs in that category, the vocational expert testified that food

preparation was not feasible because of the hypothetical's limitation on fast-paced production. (Tr. 60). Kelly then stated that no other jobs fit the hypothetical. When asked whether there were any jobs at the sedentary level that the theoretical person could perform, Kelly testified that there are "very few sedentary unskilled jobs." She stated that janitor/cleaner is the only job that would satisfy the hypothetical because it is not fast-paced and involves only occasional contact or interaction with co-workers or the public. (Tr. 61).

The ALJ then modified the hypothetical so that, in addition to the previous limitations, the person could not have any interaction with the public. Kelly stated that this limitation would reduce the numbers of janitor/cleaner jobs available, but would not otherwise change the type of jobs that could be performed. (Tr. 31-32).

Finally, the ALJ proposed a third hypothetical of a person with plaintiff's age, education and past relevant work who, because of a severe mental impairment, cannot sustain sufficient concentration, persistence or pace to perform even routine, simple tasks for a 40-hour work week. Kelly testified that such a person would not be able to perform plaintiff's past relevant work or any other jobs in the national economy. (Tr. 62).

Plaintiff's attorney modified the first hypothetical to include a frequent inability to concentrate as a result of severe depression, with "frequent" defined as occurring

during more than two-thirds of a day. Kelly testified that this restriction would eliminate all work. (Tr. 63).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 23-25). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    The ALJ did not err by finding that Williams is capable of performing jobs that exist in the national economy, even though those jobs exceed the residual functional capacity assessed by the ALJ, because the residual functional capacity stated in the ALJ's opinion is clearly erroneous, while the other aspects of the ALJ's findings at steps four and five are consistent and substantially supported by the record.

Williams argued in his brief to the Appeals Council that the ALJ erred by finding that he is capable of performing janitor/cleaner jobs that exist in the national economy, when the exertional level of those jobs exceeds the residual functional capacity that the ALJ assessed. The ALJ's residual functional capacity determination limits Williams to sedentary work despite the complete absence of evidence or argument that he has any physical impairment.

I find that the ALJ erred by including the limitation to sedentary work in her opinion. That exertional limitation is contradicted by the entire medical and testimonial record, including all of the ALJ's hypothetical questions to the vocational expert and Kelly's answers, on which the ALJ specifically relied in reaching her findings at steps four and five of the sequential evaluation. In addition, Williams never argued or testified to any facts indicating that he is limited to sedentary work or any other level of exertion that is less than heavy. Because he did not argue it and because the record clearly does not support it, the ALJ's finding of a sedentary work limitation is erroneous. However, this conclusion does not require a remand to the Commissioner for additional fact finding. When the finding that plaintiff is limited to sedentary work is omitted, the remainder of the ALJ's findings are internally consistent and substantially supported by the record.

In his applications for DIB and SSI, Williams alleged disability solely due to his depression. Based on plaintiff's diagnosis of major depressive disorder, the ALJ found that he has a single severe impairment of affective disorder. At the fourth step of the sequential evaluation, the ALJ found that Williams has the residual functional capacity to perform the full range of <u>sedentary</u> work, except that he is limited to simple, routine and repetitive tasks involving only simple, work-related decisions; with few, if any, workplace changes; and in a work environment free of fast-paced production

requirements. Based on the vocational expert's testimony, the ALJ found at step four that Williams cannot perform his past relevant work as a skilled plasterer and scaffold builder.

At the fifth step, again based on Kelly's testimony, the ALJ found that jobs exist in significant numbers in the national economy that Williams is capable of performing, such as a janitor/cleaner at the <u>light, medium or heavy</u> exertional level. This finding obviously conflicts with the ALJ's finding at the fourth step that Williams is limited to sedentary work. However, the error is not in the fifth step finding, as plaintiff argues. Rather, the error lies in the limitation to sedentary work. Once that unsubstantiated and erroneous step four finding is omitted from the opinion, the ALJ's step five findings are consistent with and supported by substantial evidence in the record, as follows.

None of the hypotheticals that the ALJ and plaintiff's attorney proposed to the vocational expert included any <u>physical</u> limitations. The ALJ specifically stated in her first hypothetical question that the theoretical person had "no exertional limitations." (Tr. 58). That lack of exertional limitations was continued in succeeding hypotheticals.

> The terms "exertional" and "nonexertional" in the regulations describe types of functional limitations or restrictions resulting from a medically determinable physical or mental impairment; i.e., exertional limitations affect an individual's ability to meet the strength demands of jobs, and nonexertional limitations or restrictions affect an individual's ability to meet the non[-]strength demands of jobs.

Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations, Soc. Sec. Ruling 96-4P, 1996 WL 374187, at *1 (July 2, 1996).

The Commissioner's regulations define exertional activities as the seven primary strength activities:  sitting, standing, walking, lifting, carrying, pushing and pulling. Nonexertional abilities are those, such as manual dexterity, vision and hearing, that do not directly affect the primary strength activities, but may affect a claimant's ability to work and thus reduce the potential occupational base.  Trimiar v. Sullivan, 966 F.2d 1326, 1333 & n.23 (10th Cir. 1992) (citing 20 C.F.R. § 404.1545(b)); Franco v. Astrue, No. 5:09-CV-179-BG, 2010 WL 3447230, at *5 (N.D. Tex. Aug. 3, 2010), report & recommendation adopted, 2010 WL 3447225 (N.D. Tex. Aug. 30, 2010) (citing Soc. Sec. Ruling 96-8p, 1996 WL 374184 (July 2, 1996)).  Medically determinable mental impairments, such as depression, are nonexertional impairments.  Willridge v. Barnhart, 54 F. App'x 592, 2002 WL 31730287, at *1 (5th Cir. 2002); Acosta v. Apfel, 162 F.3d 93, 1998 WL 770662, at *2 (5th Cir. 1998).

If "the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs [that the claimant can perform] exist in the

economy." Newton, 209 F.3d at 458 (citation omitted) (emphasis added); accord Harris

v. Barnhart, 204 F. App'x 447, 449 (5th Cir. 2006).

In the instant case, the record supports only nonexertional impairments resulting

from plaintiff's major depressive disorder. Therefore, the ALJ obtained the testimony

of a vocational expert, who had reviewed plaintiff's work records and listened to his

testimony. The ALJ's first hypothetical expressly stated that the person had no

exertional limitations. Although Kelly testified that the hypothetical person could not

perform either of plaintiff's past jobs, which were at a heavy exertional level, she also

testified that the same person could perform the job of janitor/cleaner at the light,

medium and heavy levels. Thus, Kelly understood from the information given to her that

the hypothetical person could perform all levels of exertional activities up to and

including heavy work. No one at the hearing disputed that characterization.

Kelly did not explain why the hypothetical person would not be able to perform

plaintiff's past relevant jobs as a skilled plasterer and scaffold builder.[6] However, since

_____

[6]According to the Commissioner's regulations,

[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.

20 C.F.R. § 404.1568 (2010).

Kelly testified that the person could perform other jobs at the heavy level, her reason for eliminating the past relevant work must have been that the hypothetical question limited the person to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any, workplace changes. Those <u>nonexertional</u> limitations eliminated plaintiff's past jobs because of the <u>skilled</u> nature of that work, not because the person was unable to perform heavy exertional work.

Plaintiff's arguments at the administrative level support the conclusion that the ALJ erred by including a limitation to sedentary work in plaintiff's residual functional capacity. During the hearing, plaintiff's attorney argued in his opening and closing statements that Williams meets Listing 12.04 for affective disorders and that his recurrent, severe, major depressive disorder prevents him from being able to work. (Tr. 37-38, 64). The lawyer did not mention any physical limitations at any time during the hearing. Williams did not testify that he had any such limitations. Plaintiff's attorney did not modify that part of the ALJ's hypothetical question specifying that the hypothetical person had no exertional limitations. Counsel modified the hypothetical only to include a frequent inability to concentrate, which is a nonexertional limitation. In his brief to the Appeals Council, the lawyer argued that the ALJ had erred by failing

to incorporate all of plaintiff's severe <u>mental</u> limitations in her assessment of plaintiff's residual functional capacity.

For the foregoing reasons, I find that the ALJ erred by limiting Williams to sedentary work in her written opinion. Having made this determination, the court "must still determine whether this error was harmless. Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." <u>Audler v. Astrue</u>, 501 F.3d 446, 448 (5th Cir. 2007) (quotation and citations omitted). Deleting the ALJ's erroneous finding from the opinion does not prejudice Williams because the finding is unsupported by any evidence and because he has never contended that his mental condition limits his exertional abilities. On the other hand, substantial evidence supports both the ALJ's hypothetical question to the vocational expert that Williams has no exertional limitations and the ALJ's conclusion, based on Kelly's undisputed testimony, that plaintiff can perform the exertional requirements of light, medium and heavy work.

Accordingly, this assignment of error lacks merit.

2.      <u>The ALJ did not err in assessing plaintiff's credibility.</u>

Williams argues in his brief to the Appeals Council that the ALJ failed to apply the proper legal standard of Social Security Ruling 96-7p to assess his credibility because the ALJ made only a conclusory statement that his alleged functional limitations were

not credible to the extent they conflicted with the ALJ's residual functional capacity assessment, rather than citing specific reasons for that finding. Plaintiff also argues that the ALJ failed to identify and consider the portions of the medical evidence that supported his credibility.

Williams "bears the burden of proving that . . . [he] suffers from a disability" under the first four parts of the sequential inquiry. Perez, 415 F.3d at 461. Determining the credibility of his "subjective evidence of pain and disability" is a necessary part of the ALJ's consideration of the evidence. Id. at 462.

Regarding the effect of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p on an ALJ's credibility findings, the Fifth Circuit has held that the ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962

(5th Cir. 2007). The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required. James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ in this case explained why she found that Williams's subjective symptoms and alleged limitations were not credible and were inconsistent with the evidence as a whole. As the ALJ stated, that evidence includes plaintiff's own reports that he cares for his personal needs, takes care of his wheelchair-bound mother, does laundry, cleans dishes, prepares small meals daily, shops for grocery and watches television. The ALJ accurately noted that the medical evidence indicates that plaintiff's depressive symptoms improved when he stayed on his medication regime and regressed when he was noncompliant with his medication, and that his treating psychiatrist encouraged him in October 2009 to find regular work or to volunteer. (Tr. 22, 24-25). See Thibodeaux v. Astrue, 324 F. App'x 440, 443-44 (5th Cir. 2009) (plaintiff's allegations of disabling depression were not credible when his treating psychiatrist "recommended that he begin a job search" and evidence indicated that "medication had been very effective in treating his insomnia"). The ALJ's findings regarding Williams's credibility are substantially supported by the record.

"The ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible." Hoelck v. Astrue, 261 F. App'x 683, 686 (5th Cir. 2008) (citing Hollis, 837 F.2d at 1384-85; Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995)). Accordingly, this assignment of error lacks merit.

> 3. The ALJ did not err by failing to incorporate all of plaintiff's severe limitations in the residual functional capacity assessment.

Williams argues in his brief to the Appeals Council that the ALJ failed to incorporate in her residual functional capacity assessment all of his functional limitations caused by his major depressive disorder, including decreased memory and concentration, poor appetite, inability to sleep, crying spells, isolation, suicidal thoughts and low energy and motivation. He contends that his medical treatment records document his ongoing symptoms. Williams disputes the ALJ's findings that his condition improved on medication and that his treatment was largely successful in controlling his symptoms.

Although the ALJ in her opinion did not mention every medical record that Williams cites, she is not required to do so. "The ALJ's failure to mention a particular piece of evidence does not necessarily mean that [s]he failed to consider it, and the ALJ's decision states explicitly that [s]he considered the entire record in [her] decision."

Hammond v. Barnhart, 124 F. App'x 847, 851 (5th Cir. 2005). In this case, I find that the ALJ's summary of the medical evidence is substantially correct.

Most of the progress notes that Williams cites in support of his argument consist of his own reports of his subjective symptoms, as recorded by his therapist, Renita Stark, NCC,[7] LPC.[8] As a non-physician, Stark is not an "acceptable medical source" whose opinion is entitled to controlling weight under the Commissioner's regulations. "Only licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered 'acceptable medical sources' who can provide evidence that a claimant suffers from a medically determinable impairment." Nickerson v. Astrue, No. 3-07-CV-0921-BD, 2009 WL 321298, at *6 (N.D. Tex. Feb. 6, 2009) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)).

Counselors like Stark

are defined as "other sources" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but

---

[7]National Certified Counselor is a voluntary national certification, which requires a master's degree in counseling, 3,000 hours of post-master's experience in counseling and passing a national certification exam. Requirements for the NCC Certification, http://www.nbcc.org/NCCReqs (National Board for Certified Counselors and Affiliates, Inc. 2012).

[8]Licensed Professional Counselor denotes that a license to practice has been issued by the State. National Certification and State Licensure, http://www.nbcc.org/Certification-Licensure (National Board for Certified Counselors and Affiliates, Inc. 2012).

need not be assigned controlling weight. Therefore, while the ALJ is certainly free to consider the opinions of these "other sources" in making [her] overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician.

Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(d)(1); Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)).

"Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." Thibodeaux v. Astrue, 324 F. App'x 440, 445 (5th Cir. 2009) (citing 20 C.F.R. § 404.1513(a), (d)(1); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007); Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007); Lacroix v. Barnhart, 465 F.3d 881, 885-86 (8th Cir. 2006); Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006)); accord Vandeveerdonk v. Astrue, No. 3-09-CV-1921-BD, 2011 WL 4001059, at *6 (N.D. Tex. Sept. 8, 2011); Patrick v. Astrue, No. 3:10cv371-DPJ-FKB, 2011 WL 3882818, at *3 (S.D. Miss. Aug. 15, 2011), report & recommendation adopted, 2011 WL 3881492 (S.D. Miss. Sept. 2, 2011); Patterson v. Astrue, No. 10-0600, 2011 WL 6157475, at *8 (W.D. La. Apr. 13, 2011), report & recommendation adopted, 2011 WL 2294807 (W.D. La. June 8, 2011).

The ALJ relied primarily on the opinions of plaintiff's treating psychiatrists, which are entitled to greater weight by virtue both of being acceptable medical sources and of reflecting more objective criteria on which the doctors' opinions were based. There is more than one occasion in the record when the observations and opinions of the examining and treating psychiatrist contradicted those recorded by Stark on the same day. In such cases, the ALJ was required to weigh and resolve the conflicting evidence. Newton, 209 F.3d at 452. Her conclusions are supported by substantial evidence.

Williams began psychiatric treatment and counseling on August 21, 2008. At his initial psychiatric evaluation, he reported numerous symptoms of depression. The doctor observed that plaintiff's affect was blunted and depressed. The psychiatrist diagnosed major depressive disorder without psychotic features, recurrent. Plaintiff's Global Assessment of Functioning (GAF)[9] score was assessed at 53, which reflects "only moderate symptoms of impairment in [his] overall psychological, social, and occupational functioning." Garcia v. Astrue, 293 F. App'x 243, 246 (5th Cir. 2008)

_____

[9]

The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.

Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)).

(citing <u>Boyd v. Apfel</u>, 239 F.3d 698, 700 & n.1 (5th Cir. 2001)).  The doctor opined that plaintiff's prognosis was fair.  (Tr. 216-19).

Although Williams continued to experience some symptoms, particularly when he reported noncompliance with his treatment plan and during the winter holidays, he improved with medications, as noted in his treatment notes on September 11, October 10, December 3, December 17 and December 31, 2008.  (Tr. 197-202).  His psychiatrist's observations of improvements in his condition continued throughout 2009 and into 2010.

Specifically, on December 17, 2008, Williams reported that he was feeling better, thinking about looking into jobs and planning to go fishing.  (Tr. 201).  On December 31, 2008, he reported a better appetite and sleep pattern and increased energy with occasional decreased motivation.  On December 31, 2008 and February 19, 2009, his psychiatrist observed that he had a bright affect and was noticeably more interactive and spontaneous. (Tr. 202, 205).  Plaintiff's diagnosis on February 19, 2009 was depression, improving. The doctor continued his prescription medications and instructed him to return for psychiatric examination in two months, rather than in one month as at all previous visits. (Tr. 205).

On March 18, 2009, the psychiatrist observed that Williams had a noticeably bright and full affect, but "seems determined to embrace sick role."  The doctor encouraged plaintiff to be more active.  The diagnosis was major depressive disorder,

improving.  Williams was instructed to return in two months.  (Tr. 207).  The doctor continued to note improvement on March 18, April 15 and June 10, 2009, and instructed Williams on the last date to return for psychiatric examination in three months, but to continue his therapy every two weeks.  (Tr. 210).

On October 9, 2009, Holly MacKenna, M.D., noted that Williams was stable on his medication regime, was sleeping well, was more active and social, had been doing things he enjoyed, such as fishing, and had no suicidal thoughts.  She noted that his affect was more full than it had been previously.  She added Abilify to his medication regime of Lexapro and trazadone to address his complaint of "low motivation to do anything more productive."  She encouraged him to find regular activity, such as working or volunteering. Despite his compliance with treatment, she observed that Williams "tend[s] to be somewhat resistant to therapy and has become comfortable in the sick role."  (Tr. 196).

Dr. MacKenna found on November 6, 2009 that plaintiff had an improved mood overall, was more active, had increased motivation, was sleeping well and had a full affect and more spontaneous speech.  The mild shaking he had initially experienced with Abilify had resolved.  (Tr. 224).

On January 6 and April 7, 2010, Dr. MacKenna and Pamela Jones, M.D., respectively, found that Williams was compliant with his treatment and doing fairly well. (Tr. 256, 270).

Based on the medical evidence, the ALJ found that Williams has a severe impairment consisting of a major depressive disorder. She found that he had only mild restrictions in his activities of daily living and social functioning and moderate difficulties with concentration, persistence and pace. To account for these nonexertional limitations, she limited his residual functional capacity to simple, routine and repetitive tasks involving only simple, work-related decisions; with few, if any, workplace changes; and in a work environment free of fast-paced production requirements.

The evidence substantially supports these findings, but does not substantially support the more severe limitations that Williams claims to have. Accordingly, this assignment of error lacks merit.

4. The ALJ did not err by failing to incorporate all of plaintiff's severe limitations in the ALJ's hypothetical question to the vocational expert.

Williams argues in his brief that the ALJ failed to include in her hypothetical questions all of his nonexertional limitations, particularly his inability to interact with the public and inability to sustain concentration, persistence and pace over an eight-hour work day, resulting from his depression. (Tr. 11). Based on the same evidence and

reasons stated in the preceding sections of this report and recommendation, this assignment of error also lacks merit.

The ALJ posed a hypothetical to the vocational expert that accounted for plaintiff's age, education, work experience, and mental limitations, which the ALJ found to be credible. The vocational expert testified that such a claimant could perform the jobs of janitor/cleaner at the light, medium and heavy levels, which exist in significant numbers in Louisiana and the nation.

Plaintiff was represented by counsel at the hearing, and his counsel also questioned the vocational expert. An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994); accord Vaught v. Astrue, 271 F. App'x 452, 456 (5th Cir. 2008); Boyd v. Apfel, 239 F.3d 698, 706-07 (5th Cir. 2001).

In this case, plaintiff's counsel questioned the vocational expert and asked her about the effects of plaintiff's alleged additional impairment of suffering from frequent

interruptions in concentration, persistence and pace as a result of severe depression. Kelly testified that such a claimant could not perform any jobs. However, the ALJ found that the record did not support such a requirement.

## CONCLUSION

Although the ALJ stated in her written opinion that Williams is limited to sedentary work, that finding conflicts with the remainder of her findings, with all of the evidence in the record and with plaintiff's own contention that he is disabled solely by his mental impairment. No remand is required to address this erroneous finding because, when it is omitted from the ALJ's opinion, the remainder of her findings are consistent and supported by substantial evidence in the record.

The ALJ adequately explained her assessment of plaintiff's credibility, which is supported by substantial evidence. The ALJ's assessment of plaintiff's residual functional capacity and her hypothetical questions to the vocational expert are also supported by substantial evidence.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[10]

New Orleans, Louisiana, this ___15th___ day of May, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.